Fecteau, J.
The plaintiff, Commerce Insurance Company (“Commerce”), seeks a judgment that declares that the failure of the defendant Angelina Flores (“Flores”), to submit to an examination under oath to its completion is a breach of the policy conditions relevant to the insurance benefits claimed by her. The claim that underlies the case at bar arises out of an alleged accident causing personal injury to the defendant that occurred between the defendant while a pedestrian and a motor vehicle being owned and operated by an insured of the plaintiff. Flores made a claim for personal injury protection benefits under the policy of insurance that Commerce had written on behalf of its insured and the examination under oath was scheduled on account of that claim.
The matter came on for a trial on the merits on March 28, 2000, before me sitting without jury. The parties agreed to submit the merits of the case upon written exhibits only, and made arguments thereon. Upon consideration of the evidence in the case and the arguments of the parties, I make the following findings of fact and rulings of law.
FINDINGS OF FACT
1.On or about February 27, 1997, Flores was walking in the parking lot of a commercial location in the Webster Square area in Worcester. She alleges that a motor vehicle owned and operated by one Eugene Leclair struck her, causing injury. In addition, her daughter-in-law Nancy Matías claims to have been injured by Leclair’s motor vehicle. A police officer had been called to the scene and Flores was not noted to have been injured in the accident.
2. Leclair was insured under a policy of automobile insurance coverage with Commerce, under policy number HT6565. The policy was a Sixth Edition policy. The Massachusetts auto policy includes “personal injury protection” benefits for persons injured as pedestrians by an insured vehicle under Part II, no. 3. In addition, the policy includes the following: “we may also require you and any person seeking payment under any part of this policy to submit to an examination under oath at a place designated by us, within a reasonable time after we are notified of the claim.”
3. On or about March 13, 1997, a letter of representation was sent to Commerce by Flores’ attorney, and requested an application for personal injury protection benefits (“PIP”) under G.L.c. 90, sec. 34M. Upon receipt of this notice of claim, Commerce contacted its insured, Leclair, and obtained a statement in which he denied having made any contact with any pedestrians on the relevant date, time and place, although admitting he had been present and operating his motor vehicle.
4. On May 16, 1997, Commerce sent the PIP application to her attorney; it was completed and returned to Commerce on May 20, 1997. Commerce acknowledged receipt of the applications and informed Flores through her attorney that it would request medical documentation and wage loss verifications, as well as asking her attorney to forward medical bills to it.
5. Flores’s attorney sent a package of medical bills and reports to Commerce on June 30, 1997. On July 25, 1997, Commerce informed counsel that it was not paying one or more medical bills at that time as the claim was under investigation. This resulted in a demand letter drawn under the provisions of G.L.c. 93A, sec. 2, incorporating therein various sections of G.L.c. 176D, sec. 3, being sent on August 5, 1997. Commerce replied to this letter on August 26, 1997, in which it outlined the questions it had concerning its liability for payment of the benefits claimed. These questions primarily concerned the difference among the versions of the accidents it received and Flores’s involvement therein, with Commerce pointing to the versions as given by their insured and the information received from the police officer suggesting that there had been no contact between the vehicle and Flores.
6. The plaintiff scheduled an “examination under oath” for December 11, 1997, sending notice to both Flores and Mafias. It was reasonable for it to do so given the questions raised by Commerce on Flores’s connection with the happening of the accident and her contact with the vehicle. Both claimants went to the examination accompanied by an attorney from their counsel’s office. The examination of Mafias went first. During the early stages of the examination, Flores’ attorney stated on the record that he was not going to permit any questions concerning liability to be asked of his client and limited examination to injuries and lost wages; during the examination, he refused to *588 permit his client to answer several questions concerning the happening of the accident, stating typically that a particular question related to “third-party liability" and thus irrelevant to the PIP application. Following the examination of Matias, Flores’ examination began. Before Commerce’s attorney had even begun her examination, Flores’ attorney reiterated his statement made during Matias’ examination, seeking a commitment from Commerce that if they (Flores and her attorney) go through with the examination that it will “affirm coverage and pay the PIP." Upon learning from Commerce’s attorney that she would not be able to confirm coverage following the examination, Flores’ attorney terminated the examination. I infer that by Flores’ attorney demanding that Commerce confirm coverage, he meant for Commerce to accept liability for payment of benefits. I also infer that the statement of Commerce’s attorney that she would not be able to confirm coverage after the examination meant that the results of the examination might dictate a contrary finding, saying that “I don’t know what they’re going to do.” She also intimated that if Flores’ attorney persisted in his position regarding the limitation of the examination, that Commerce was likely to deny liability on policy grounds.
RULINGS OF LAW
The claimant seeks payment of personal injury protection benefits from Commerce Insurance Company alleged by her to be due on account of suffering injury while a pedestrian and caused by a Commerce insured. Such coverage exists under the Standard Massachusetts Automobile Insurance Policy, Sixth Edition, Part II, no. 3. In addition, the policy includes the following: “we may also require you and any person seeking payment under any part of this policy to submit to an examination under oath at a place designated by us, within a reasonable time after we are notified of the claim.”
The defendant contends that the policy requirement that any person who seeks benefits to submit to an examination under oath is not a condition precedent to recovery of those benefits, that a failure to attend or submit to such an examination does not amount to a per se violation of the policy but rather requires that an insurer prove actual prejudice as it must under the general policy requirement that a claimant in Flores’ position has a duty to cooperate, that a claimant in the position of Flores need not submit if such exercise would be needless and/or futile, given the insurer’s obvious intent to deny liability for payments which was clear even before the examination began and that the insurer had adequate information from all other sources to act without the need for an examination.
In Mello v. Hinaham Mutual Fire Insurance Company, 421 Mass. 333 (1995), a case that involved a first-party fire loss claim, the Supreme Judicial Court distinguished the duty under the policy to submit to an examination under oath from the duty to cooperate, as they relate to the burden on an insurer to prove prejudice, holding that a failure to submit to an examination under oath, if reasonably requested, to be a failure to comply with a condition precedent to recovery and that it constitutes a material breach of the insurance contract. At p. 337. Again, in the case of Ellis v. Safety Insurance Company, 41 Mass. 630, 638-39 (1996), a case in which a first-party vehicle theft claim was Involved, the Appeals Court reiterated that “the insured’s failure to comply with a condition requiring an examination under oath constitutes a material and substantial breach of the insurance contract as a matter of law.” [Citing Mello, supra, and Cohen v. Commercial Casualty Insurance Company, 277 Mass. 460, 462 (1931), a burglary loss.)
Here, given the conflicting information obtained by Commerce from the claimant, its insured Leclair and the police officer who responded to the scene, the request of Commerce for an examination under oath was reasonable. There was a legitimate question of whether contact was made between the Commerce-insured vehicle and Flores, and, if so, how it occurred. It does not matter whether the question overlaps with an actual or potential third-party liability case. For her attorney to limit, interfere and/or obstruct the examination by the attorney for Commerce as demonstrated in the transcriptions of the two examinations amounts to the conclusion that she did not submit to an examination under oath. Since it is obvious that the Massachusetts Automobile Insurance Policy allows PIP coverage for pedestrians injured by an insured vehicle, I infer that his demand for Commerce to “confirm coverage” meant that he was demanding from Commerce an acceptance of liability for benefits on behalf of his client. To insist upon such an acceptance defeats the purpose of the examination under oath, for surely the purpose of Commerce’s decision to schedule an examination under oath was due to the uncertainty of their liability for these benefits and would make such an examination a nullity.
Commerce was within its rights to schedule such an examination given the state of the investigation up to that point in time. Flores was not within her rights to dictate to Commerce the questions that it could and could not ask. Even though PIP benefits are “no fault” benefits, the claimant must still prove that there is a causal relationship between her injuries and an insured vehicle. Commerce was reasonable in attempting to inquire into that relationship and Flores prevented it from doing so. It did not have to rely solely upon written submissions of Flores, or the examination under oath of her co-claimant at that time, Nancy Matias. This amounts to a failure to submit to the examination. This failure to submit is a material and substantial breach of the policy as a matter of law and excuses Commerce from liability on the policy.
*589 ORDER FOR JUDGMENT
For the foregoing reasons, a judgment shall enter in favor of the plaintiff that declares that the defendant has failed to submit to an examination under oath, that said failure is a material and substantial breach of the policy conditions, and that such breach absolves Commerce Insurance Company of liability under its policy of insurance for the claim of Angelina Flores for “personal injury protection benefits” arising out of the events of February 27, 1997.